REED v. KING AND KING.

1. Mortgage: SURRENDER INDUCED BY FRAUD: PARTNERSHIP. K. and R. having entered into partnership, R. loaned K., who was unable to pay his part of the required capital, $1,200, and took from K.'s wife, a mortgage upon property owned by her to secure the same. The

partnership was subsequently dissolved, R. purchasing the interest of K. in the partnership effects, and surrendering to him the aforesaid mortgage in payment of the same. R. afterward instituted suit to foreclose this mortgage, alleging that he had been induced to surrender it by fraudulent representations on the part of K. as to the condition of the partnership affairs. It appeared that K. had charged himself on the partnership books, for goods received and money collected, with only the sum of $399.60, when in fact he was indebted therefor in the sum of $689.29, and that he had fraudulently concealed this fact from R. *Held*, that as the negotiation and surrender of the mortgage had been made upon the basis and with the belief, that K. owed only the smaller amount, that the mortgage should be treated as unsatisfied to the extent of the difference between the two sums, and a foreclosure ordered accordingly.

2. —— HUSBAND AND WIFE. A general judgment against a wife who has given a mortgage upon her property to secure a debt of the husband, is erroneous. It should limit her liability to the mortgaged premises.

## Appeal from Keokuk County.

### FRIDAY, DECEMBER 20.

JANE KING, the wife of John King, her co-defendant, executed and delivered to the plaintiff, a mortgage on certain premises therein described, to secure the payment of a $1200 note given by her husband to the plaintiff, who now seeks to foreclose the same. To the petition filed for this purpose, the defendants plead payment, and the possession of said note and mortgage as the evidence thereof. The defendant, Jane King, in her cross-bill, sets up the same defense, and avers that although they have the securities referred to in their possession, the mortgage is not satisfied of record, that the plaintiff refuses to enter such satisfaction, and the court is asked to compel him to do so.

The plaintiff's reply in effect, is that the possession of the note and mortgage by the defendants was obtained by fraud, and false representations on the part of John King,

in this wise: that he and the said John, in May, 1865, entered into partnership in the mercantile business, and that to enable King to pay his part of the required capital, plaintiff loaned him $1,200, and took the note and mortgage. They entered into business, King being the general manager and book-keeper. The next year after this they dissolved, plaintiff surrendering up the note and mortgage aforesaid for King's interest in the partnership effects and accounts. This, it is alleged, he was induced to do upon King's representation of the condition of the affairs of the partnership, to the effect that it had cleared $1,000 net, which the books would show, whereas, it in fact had lost $3,000; that there was $500 of outstanding accounts on good solvent men, when they were found to be worthless and insolvent. That the defendant, King, also fraudulently concealed an indebtedness on the part of the firm, of $1,000, etc., etc., and but for these false and fraudulent concealments and representations, he never would have surrendered the note and mortgage in question.

Upon these issues the cause was tried to the court, who found the facts under the evidence, and deduced his conclusions therefrom as follows:

That on the 18th of May, 1865, plaintiff, defendant, John King, and one Parr, entered into a copartnership in merchandising, as equal partners, and plaintiff loaned said King $1,200, for which he executed to plaintiff his note on the 19th of May, due in one year, with interest at ten per cent, and to secure this note, defendant, Jane King, on the same date executed the mortgage on which suit is brought.

That about the 19th of July, 1865, plaintiff purchased the interest of Parr in the concern, became the owner of two-thirds, and defendant continued to own one-third, and the business continued with this agreement between the parties: that the said King should remain in the store, be the salesman and book-keeper, and the plaintiff should be what they termed cashier, i. e., all moneys received should be paid over to him, and he should make all purchases and pay all debts.

That said partnership continued until the last of March, 1866, when

the parties commenced negotiations for the sale of King's interest to plaintiff.

Pending these negotiations neither party knew exactly the condition of the firm, what had been its profits or losses, what was the value of its merchandise and credits or what were its liabilities.

Defendant, King, who had charge of the store and books, had a much more thorough knowledge of the condition of their business than plaintiff, and represented to plaintiff, that the profits of the business had been about $1,000.

That the accounts were on responsible persons, and that his (King's) account for goods received out of the store was about $275, and said nothing about any indebtedness of the firm, or that he (King) had received moneys of the firm for which he had failed to account or pay over.

That if these representations had been true and King's liability to the firm had not been more than stated, King's interest in the concern would have been worth the full amount of his liability to plaintiff.

That during the negotiation plaintiff claimed that there had been no profits arising from their business, that they had made but little if any thing.

That plaintiff was as well acquainted in the community where the business was transacted, as defendant, and by a few minutes examination of the account book, which was present, might have been as well informed as to the responsibility of the debtors of the firm as defendant.

That plaintiff believed and relied upon defendant's representations that his, defendant's account, was only about $275, and had no knowledge whatever of defendant's failing to account for all moneys collected.

That neither party said any thing about the indebtedness of the firm, and it does not appear in evidence whether either knew what the indebtedness was.

That upon these representations, and with the knowledge of the facts only as above set forth, the parties traded. Plaintiff gave defendant for his third interest in the concern, his, defendant's note, amounting, principal and interest, to $1300, and credited defendant's account, which appears by the books, as footed by defendant, to be $290.29, and delivered the note to defendant and agreed to satisfy the mortgage, and the goods were invoiced, and goods and books turned over to plaintiff.

That plaintiff, upon examination of the books, not finding them as he expected, finding errors in them and ascertaining that the firm was not in so good a condition as he expected to find it, refused to satisfy the mortgage.

And the court further finds the truth to be that the losses of the firm exceeded the profits about $200.

Reed v. King and King.

That there were about $400 of the accounts not on responsible persons, whether worthless or not the evidence does not show.

| | |
|---|---:|
| That defendant's account for goods was,.................. | $366 32 |
| That defendant had collected in money for which he had failed to account, ..................................... | 323 57 |
| Making defendant's actual liability to the firm,............ | $689 89 |
| Instead of, as represented and shown by the account, ...... | 290 29 |
| Making a difference of,.................................. | $399 60 |

That the liabilities of the firm amounted to between $500 and $600, and the actual value of defendant's interest therein did not exceed $700.

That plaintiff never offered to rescind the contract by restoring to defendant his interest in said goods and accounts, never tendered to defendant the goods or accounts or proceeds thereof, but proceeded to sell the goods and collect the accounts and use the proceeds.

And from the foregoing facts the court finds the following conclusions of law:

That plaintiff, not relying on defendant's representations as to the profits of the firm, cannot claim to be defrauded thereby. That plaintiff being in a position where, by the exercise of ordinary diligence, he might have known whether the accounts were or not upon responsible persons, and having retained and proceeded to collect them, cannot now claim to be defrauded by any misrepresentation of defendant in relation thereto.

That the failure of defendant to disclose the fact that the firm was in debt cannot be held as fraud on plaintiff. Plaintiff having failed to prove that defendant knew of such indebtedness, and the business of the plaintiff, as the member of the firm who was to contract and pay all debts, placed him in a more favorable position to know what the indebtedness was than defendant.

That plaintiff cannot now treat said contract as a nullity and secure the full amount of said mortgage. Yet, that the representation of defendant and the footing up of his account at $290.29 when in fact it was $366.32, and the suppression of the truth that he had received $323.57 for which he had failed to account, was a fraud on plaintiff to that extent, and defendant having obtained in the settlement of said mortgage a bargain more favorable to the extent of $399.60, by means of such fraud than he otherwise would have had, the mortgage to that extent should be held not satisfied.

Decree of foreclosure is therefore entered in favor of plaintiff against defendants to satisfy the said sum of $399.60 and interest and costs.

E. S. SAMPSON, <em>Judge.</em>

Reed v. King and King.

A general judgment of foreclosure was entered in accordance with these conclusions, and the defendants excepting, appeal.

*G. D. Woodin* for the appellants.

*Harned & Mackey* for the appellee.

Lowe, Ch. J. — Among the facts found by the court, was that the defendant, John King, at the date of the dissolution and settlement was indebted to the firm for goods received and money collected and not accounted for, in the sum of $689.89, when he had only charged himself on the books with the sum of $290.29, making a difference of $399.60, and that this fact was fraudulently concealed by the defendant, and that inasmuch as the negotiation was made upon the basis, that the defendant's indebtedness was only $290.29, that he should hold the mortgage unsatisfied to the extent of the difference in the two amounts, and render a judgment of foreclosure for the same.

*1. MORTGAGE: surrender induced by fraud: partnership.*

So far as this judgment is a general one against Jane King, the wife, who had not signed the note, but only given a mortgage security for the payment of the debt, it is erroneous and should be modified so as to limit her liability to the value of the mortgaged premises.

*2. —— husband and wife.*

In other respects we find no objections to the decision of the court upon the facts, an inspection of which, as found, will show that no injustice has been done the appellant, while upon the other hand no more than justice has been awarded to the plaintiff. That the latter could recover for the fraud practiced upon him without rescinding the contract and offering to return the goods purchased, we suppose will not admit of much question.

We shall therefore remand the cause, that the same judgment may be rendered with the modification above suggested, and that the cost of this appeal be equally paid by plaintiff and the defendant, John King.

Affirmed as modified.